UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| LEE JACOBS, as Special Administrator for the Estate of Juline Jacobs; PAUL KNUTSON, as Special Administrator for the Estate of Mavis Knutson; RON RESHETAR, as Special Administrator for the Estate of Grace Reshetar; MYRNA SORENSEN, as Special Administrator for the Estate of Opal Sande, Plaintiffs, vs. THE EVANGELICAL LUTHERAN GOOD SAMARITAN SOCIETY, individually and d/b/a Good Samaritan Society Albert Lea, Defendant. | CIV. 10-4035-KES ORDER DENYING DEFENDANT'S MOTION TO DISMISS |

Defendant, Evangelical Lutheran Good Samaritan Society (Good Samaritan), moves to dismiss the complaint under Rule 12(c). Plaintiffs, Lee Jacobs, Paul Knutson, Ron Reshetar, and Myrna Sorensen, resist Good Samaritan's motion. The motion is denied.

**BACKGROUND**

Plaintiffs allege that several residents[1] were subjected to abusive and neglectful conduct while residing at Good Samaritan's facility in Albert Lea, Minnesota. Prior to the filing of this complaint, the residents died from causes unrelated to the alleged abusive and neglectful conduct. Plaintiffs brought this suit against Good Samaritan alleging direct liability for negligent management, direct liability for negligent supervision, direct liability for negligent retention, and strict liability. Plaintiffs seek the following four types of specific relief: (1) damages for the physical pain and mental and emotional suffering experienced by the residents; (2) damages for the medical expenses related to the injuries sustained by the residents; (3) punitive damages; and (4) prejudgment interest. Good Samaritan moves to dismiss these claims because Minnesota law does not allow recovery when an injured person dies from causes unrelated to the underlying tortious actions.

**STANDARD OF REVIEW**

Because Good Samaritan has filed its answer to the complaint, its motion to dismiss for failure to state a claim upon which relief can be

---

[1] The residents are identified in the complaint as Juline Jacobs, Mavis Knutson, Grace Reshetar, and Opal Sande. Plaintiffs have been appointed special administrators for the residents' estates.

granted technically falls under Rule 12(c).² *See Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). Regardless of whether the motion to dismiss falls under Rule 12(b)(6) or Rule 12(c), however, the standard of review is the same. *See id.* (noting that the "distinction [between Rule 12(c) and 12(b)(6)] is purely formal, because we review this 12(c) motion under the standard that governs 12(b)(6) motions") (citations omitted)). Recently the United States Supreme Court addressed the proper standard to be applied to a motion to dismiss under Rule 12(b)(6). *See Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). The court will therefore apply the standard of review and applicable case law associated with Rule 12(b)(6) even though this motion technically falls under Rule 12(c).

Under Rule 12(b)(6), the facts alleged in the complaint must be considered true and all inferences must be viewed in favor of the nonmoving party. *Strand v. Diversified Collection Serv., Inc.*, 380 F.3d 316, 317 (8th Cir. 2004) (citing *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002)). Recently, the United States Supreme Court emphasized that

---

² Plaintiffs argue that Good Samaritan's motion to dismiss under Rule 12(c) is premature. Good Samaritan has filed its answer to plaintiffs' complaint and has not asserted a counterclaim or crossclaim. The pleadings are therefore concluded for purposes of Rule 12(c). "Rule 12(h)(2) provides that '[a] defense of failure to state a claim upon which relief can be granted' may be advanced in a motion for judgment on the pleadings under Rule 12(c)[.]" *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990) (citation omitted). Thus, Good Samaritan's motion to dismiss under Rule 12(c) is not premature.

"the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id.* at 1949. The Supreme Court further stated that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949; *see also Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) ("A complaint states a plausible claim for relief if its 'factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " (citing *Iqbal*, 129 S. Ct. at 1949)). The "fundamental tenet of Rule 12(b)(6) practice" that "inferences are to be drawn in favor of the non-moving party" has not been changed. *Braden*, 588 F.3d at 595 (citations omitted).

## ANALYSIS

The parties agree that there is a conflict between South Dakota's and Minnesota's laws pertaining to the survivability of the underlying causes of actions. According to both parties, if Minnesota's survival statutes apply, then plaintiffs' claims are properly dismissed because the residents' claims

4

died when the residents died. *See* Minn. Stat. § 573.01. If the equivalent South Dakota statutes apply, however, then the claims survive the residents' deaths. SDCL 15-4-1 (stating that "[a]ll causes of action shall survive and be brought, notwithstanding the death of the person entitled . . . to the same"). Thus, the issue before the court involves a basic conflict of laws analysis: does Minnesota or South Dakota law apply with regard to whether the residents' causes of action survive their deaths.

"Because suit was brought in this federal district, South Dakota is the forum state and its choice-of-law rules are applied to determine the rights of the parties in this action." *St. Paul Reinsurance Co. v. Baldwin*, 503 F. Supp. 2d 1255, 1261 (D.S.D. 2007) (citations omitted); *see also Allianz Ins. Co. v. Sanftleben*, 454 F.3d 853, 855-56 (8th Cir. 2006) (applying the forum state's choice-of-law rules in a diversity action). In a multi-state tort conflicts analysis, the South Dakota Supreme Court applies "the most significant relationship approach" as set out in the Restatement (Second) of Conflict of Laws. *Chambers v. Dakotah Charter, Inc.*, 488 N.W.2d 63, 67 (S.D. 1992) ("[W]e now adopt the most significant relationship approach to govern multi-state tort conflicts." (applying the Restatement (Second) of Conflict of Laws)).

Good Samaritan argues that Minnesota's laws should apply under the most significant relationship test because of the numerous contacts between the parties and Minnesota. While the Restatement (Second) of

5

Conflict of Laws recognizes that "[m]ost cases to date have held that the question of survival is determined by the local law of the state of conduct and injury[,]" the Restatement also states "[i]t may be questioned whether such decisions will invariably be followed in the future in view of the growing realization that all issues in tort need not be governed by a single law." Restatement (Second) of Conflict of Laws § 167, comment c. This concept is more formally identified as the doctrine of dépeçage. *See generally Ewing v. St. Louis-Clayton Orthopedic Group, Inc.*, 790 F.2d 682, 686 (8th Cir. 1986) ("Under the conflict of laws doctrine of 'depecage,' such an approach is perfectly permissible and even considered desirable in many instances." (citations omitted)). Accordingly, the only issue currently before the court is whether South Dakota's or Minnesota's survival statutes apply. The issue is not whether South Dakota's or Minnesota's law applies to the potential rights of the residents and the potential liabilities of Good Samaritan.

The Restatement (Second) of Conflict of Laws has a specific section, Survival of Actions, which states that "[t]he law selected by application of the rule of § 145 determines whether a claim for damages for a tort survives the death of the . . . injured person." Restatement (Second) of Conflict of Laws § 167. Section 145 reads as follows:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which,
6

with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

> (a) the place where the injury occurred,
>
> (b) the place where the conduct causing the injury occurred,
>
> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
>
> (d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

And § 6 states in relevant part that "the factors relevant to the choice of the applicable rule of law include"[3]

> (a) the needs of the interstate and international systems,
>
> (b) the relevant policies of the forum,
>
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>
> (d) the protection of justified expectations,

---

[3] Subsection (1) of § 6 states that "[a] court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law." Neither party has identified a specific statutory directive with regard to this issue, and the court could not identify such a statute.

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

The contacts between the parties and Minnesota include the following: (1) the underlying injuries occurred in Minnesota; (2) the conduct that directly caused the injury to the residents occurred in Minnesota; (3) the employees, the residents, and the residents' representatives were Minnesota residents at the time of the alleged incidents; and (4) the relationship between the parties was centered in Minnesota.

There are also some important contacts between the parties and South Dakota as well. These contacts include: (1) Good Samaritan has its principal place of business in South Dakota; and (2) Good Samaritan's alleged actions, or inaction, of failing to implement adequate safeguards that would have protected its residents from its employees occurred in South Dakota.[4]

Good Samaritan relies on the facts that most of the contacts are with Minnesota and that the injury occurred in Minnesota. *See* Restatement (Second) of Conflict of Laws § 146 ("In an action for personal injury, the

---

[4] The complaint alleges that Good Samaritan "directly controls the day to day operations of Good Samaritan Society Albert Lea, in part, through its Minnesota Regional Director" and that the director "is based . . . in [the] Sioux Falls, South Dakota office." Docket 1 at 2.

local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, . . . some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties[.]"). As comment c to § 167 makes clear, however, "[t]he state where conduct and injury occurred will not by reason of these contacts alone be the state that is primarily concerned with the issue whether tort claims arising from the injury survive the death of the tortfeasor." Restatement (Second) of Conflict of Laws, § 167. Rather, "[t]he determination of the state of the applicable law should be made in the light of the choice-of-law principles stated in § 6." *Id.* at comment c. Thus, the court will apply the factors set out in § 6 while cognizant of the underlying contacts between the parties and the states.

With regard to the second factor,[5] the relevant policies of the forum, South Dakota has an interest in ensuring that corporations like Good Samaritan, which have their principal place of business within South Dakota, do not operate their business in such a manner that results in people being injured. *See, e.g., Koeniguer v. Eckrich*, 422 N.W.2d 600, 601 (S.D. 1988) ("A hospital is liable to its patients for negligence only where there is a causal connection between the hospital's negligence and the

---

[5] The first factor, the needs of the interstate and international systems, is not relevant to this issue and does not weigh in favor of either South Dakota or Minnesota law.

patient's injury." (internal quotation and citation omitted)); *Small v. McKennan Hosp.*, 403 N.W.2d 410, 411-13 (S.D. 1987) (holding that hospital was not entitled to summary judgment with regard to the plaintiff's claim that the hospital breached its duty to protect an entrant from being raped and murdered after having been abducted from hospital's parking lot). The fact that the injured people are not South Dakota citizens does not destroy South Dakota's interest in holding the corporation accountable for any actions that occurred within the state that caused injury. Thus, this factor weighs in favor of applying South Dakota's survival statutes because Good Samaritan would otherwise be unaccountable for its alleged actions that occurred in South Dakota.

The third factor looks at the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue. Minnesota's policy with regard to a cause of action's non-survival appears to be based on "a remnant of the early common law when the cause of action for intentional tort was considered an adjunct to criminal punishment." *Bigelow v. Halloran*, 313 N.W.2d 10, 12 (Minn. 1981) (citation omitted). "If the victim died it was thought that the king, and not the victim's representatives, should seek redress." *Id.* at 12 (citation omitted). The Minnesota Supreme Court has criticized this rationale as being outdated and not in accordance with the modern principles of law.

*See id.* Indeed, the Minnesota Supreme Court has repeatedly "agree[d] with Prosser's observation that 'the modern trend is definitely toward the view that tort causes of action and liabilities are as fairly a part of the estate of either plaintiff or defendant as contract debts, and that the question is rather one of why a fortuitous event such as death should extinguish a valid action.'" *Id.*; *see also Thompson v. Estate of Petroff*, 319 N.W.2d 400, 405 n.8 (Minn. 1982). Thus, the rationale behind Minnesota's survival statutes has been discredited by the Minnesota Supreme Court.

The Restatement (Second) of Conflict of Laws also identifies a second potential interest behind the non-survival of a cause of action: the protection of the residents' estates. *See* Restatement (Second) of Conflict of Laws § 167 illustration 1 ("[T]his rule was presumably intended to protect the estates of [State] X decedents[.]"). This interest, however, is inapplicable in light of the circumstances in this case. First, there is nothing to suggest that this case will endanger the residents' estates; recovery would actually improve their estates.[6] Second, Good Samaritan's estate is not jeopardized because it is a corporation. Thus, Minnesota's interest in protecting its citizens' estates is not applicable.

---

[6] The court does not know the terms of the agreement between plaintiffs and their attorneys. The court notes, however, that every plaintiff but one appears to be related to the respective decedents because the plaintiff and the decedent have the same last name. Docket 1 at 1-2.

Another possible policy reason for the non-survival of a cause of action when the victim dies from an unrelated cause is the difficulty in determining the deceased victim's damages, especially when dealing with pain and suffering. *See Estate of Benson v. Minn. Bd. of Med. Practice*, 526 N.W.2d 634, 637 (Minn. Ct. App. 1995) ("Because the alleged injuries are so personal, a jury would have to guess on the extent and nature of the decedent's emotional devastation, humiliation and ostracism without his presence and testimony at trial."). As such, Minnesota arguably has an interest in protecting its residents from speculative damages awards in those situations where the victim is unable to testify because of death.[7] This interest can be protected, however, by applying Minnesota law, which bars an award of damages based on speculation and guess, to the underlying claims. *See* 4A Minn. Dist. Judges Ass'n, Minnesota Practice, Jury Instruction Guides–Civil, CIVJIG 90.15 (5th ed. 2010).

Good Samaritan identifies another interest that Minnesota has in light of the various contacts between the parties and Minnesota, namely the interest in regulating insurance companies and nursing home facilities that conduct business within its state. Those interests may be relevant to the

---

[7] The validity of this concern is questionable because victims who are otherwise unable to testify due to mental incompetence or other similar reasons are not barred from presenting claims that include an element of emotional harm.

application of Minnesota law with regard to the underlying claims. They are not, however, related to Minnesota's survival statutes. And Good Samaritan has not demonstrated how the application of Minnesota's survival statutes would further those collateral policies and interests.

Assuming that it is proper to consider collateral policies and interests, the court finds that Minnesota's other collateral policies and interests do not support the application of Minnesota's survival statutes. For example, Minnesota has expressed a clear interest in protecting its vulnerable adults. *See* Minn. Stat. § 626.557 (The Minnesota Vulnerable Adult Act); *Kay v. Fairview Riverside Hosp.*, 531 N.W.2d 517, 520 (Minn. Ct. App. 1995) (The [Minnesota Vulnerable Adult] Act imposes absolute liability for damages caused by its violation." (citation omitted)). And allowing Good Samaritan to escape potential liability under this act simply because its residents died from unrelated causes would serve only to undermine the legitimate goal of protecting those who are often unable to protect themselves. Thus, Minnesota's collateral interests and policies do not support the application of Minnesota's survival statutes.

For these reasons the court finds that Minnesota's policies and interests do not support the application of Minnesota's survival statutes under these circumstances. Rather, Minnesota's interests in protecting its vulnerable residents weigh in favor of applying South Dakota's survival

statutes. Thus, the third factor weighs against applying Minnesota's survival statutes and in favor of applying South Dakota law.

The fourth factor, the protection of justified expectations, does not support the application of Minnesota's survival statutes. Because its alleged actions are based in negligence, Good Samaritan could not have acted as it allegedly did with the expectation that the residents' causes of actions would abate in the event that they died from unrelated causes. *Cf.* Restatement (Second) of Conflict of Laws § 6 comment g ("There are occasions, particularly in the area of negligence, when the parties act without giving thought to the legal consequences of their conduct or to the law that may be applied. In such situations, the parties have no justified expectations to protect[.]"). Moreover, it is unlikely that Good Samaritan made its business decisions with the understanding that if it acted negligently, there was a *chance* that the injured party would die from an unrelated cause, which would result in Good Samaritan being free from liability under Minnesota law. Thus, this factor does not apply with regard to the issue before the court.

The fifth factor, the basic policies underlying the particular field of law, weighs in favor of applying South Dakota's survival statutes. As the Minnesota Supreme Court emphasized, "the modern trend is definitely toward the view that the tort causes of action and liabilities are as fairly a

14

part of the estate of either plaintiff or defendant as contract debts, and that the question is rather one of why a fortuitous event such as a death should extinguish a valid action." *Bigelow*, 313 N.W.2d at 12 (internal quotations and citation omitted). Thus, this factor weighs in favor of applying South Dakota's survival statutes.

The sixth factor, the certainty, predictability, and uniformity of result, weighs in favor of applying South Dakota law because the outcome will not depend on whether the alleged victims died from some unrelated cause. In applying South Dakota's survival law, if a corporation acts in a manner that causes another to suffer harm, the corporation will be held accountable regardless of whether the victim dies.[8] Thus, applying South Dakota law with regard to this issue will result in greater certainty and uniformity than if Minnesota law is applied.

The seventh factor, the ease in the determination and application of the law to be applied, is not helpful because both states' survival statutes would be relatively easy to apply.

---

[8] This factor is not entirely relevant to this issue because the parties were unlikely "to give advance thought to the legal consequences of their transactions" for the same reasons expressed above with regard to the fourth factor: no one honestly took into consideration the legal consequences of a potential plaintiff dying from unrelated causes before agreeing to interact with the other. *See* Restatement (Second) of Conflict of Laws § 6 comment i.

Finally, even under Minnesota's survival statutes, "the trustee . . . may maintain an action for *special* damages arising out of such injury if the decedent might have maintained an action therefor had the decedent lived." Minn. Stat. §573.02, subd. 2 (emphasis added). Here, the complaint seeks special damages in the form of medical expenses and prejudgment interest. Docket 1 at 9. Thus, even if Minnesota's survival statutes were to apply, the court would nonetheless deny Good Samaritan's motion to dismiss for failure to state a claim upon which relief can be granted.

In summary, the second, third, fifth, and sixth factors demonstrate that South Dakota's interests with regard to the issue of whether the residents' claims survive their deaths exceed Minnesota's interests. The remaining factors are either unhelpful or otherwise inapplicable. South Dakota has a significant interest in ensuring that corporations that have their primary place of business within its borders are held accountable regardless of whether the victims die from unrelated causes. Conversely, Minnesota's policies and interests with regard to the non-survival of the residents' claims are largely inapplicable. Minnesota's collateral policies and interests in protecting its vulnerable citizens actually undermine the application of Minnesota's survival statutes and support the application of South Dakota's survival statutes.

After weighing the factors set forth in § 6, while considering the relevant contacts between the parties and the two states as set forth in § 145 and § 146, the court finds that South Dakota's interests are sufficiently greater than Minnesota's interests with regard to whether the residents' claims survive their deaths. Thus, under the most significant relationship test, South Dakota's survival statutes apply, and Minnesota's survival statutes do not apply. Accordingly, Good Samaritan's motion to dismiss for failure to state a claim upon which relief could be granted is denied. It is

ORDERED that Good Samaritan Society's motion to dismiss (Docket 23) is denied.

Dated December 28, 2010.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE