UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| LEE JACOBS, as Special Administrator for the Estate of Juline Jacobs; PAUL KNUTSON, as Special Administrator for the Estate of Mavis Knutson; RON RESHETAR, as Special Administrator for the Estate of Grace Reshetar; and MYRNA SORENSEN, as Special Administrator for the Estate of Opal Sande,<br><br>    Plaintiffs,<br><br>   vs.<br><br>THE EVANGELICAL LUTHERAN GOOD SAMARITAN SOCIETY, individually and d/b/a Good Samaritan Society Albert Lea,<br><br>    Defendant. | CIV.  10-4035-KES<br><br><br><br><br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

Defendant, The Evangelical Lutheran Good Samaritan Society, moves for summary judgment alleging that because Minnesota law applies to this claim, plaintiffs' personal injury claims abate under the Minnesota survival statute. Docket 69. Alternatively, Good Samaritan alleges that plaintiffs cannot satisfy the elements of their claims, Minnesota statute § 626.557 provides no right of action, and res judicata bars subsequent litigation in this case. *Id.*; Docket 117. If this action continues, Good Samaritan moves to seal a

number of confidential business documents. Docket 67. Plaintiffs, Lee Jacobs, as Special Administrator for the Estate of Juline Jacobs, Paul Knutson, as Special Administrator for the Estate of Mavis Knutson, Ron Reshetar, as Special Administrator for the Estate of Grace Reshetar, and Myrna Sorensen, as Special Administrator for the Estate of Opal Sande, resist all motions. Docket 77; Docket 92; Docket 118. Plaintiffs move to compel discovery of one of Good Samaritan's personnel files. Docket 57. Good Samaritan resists this motion. Docket 62. For the foregoing reasons, Good Samaritan's motion for summary judgment is granted, and all other motions are denied as moot.

## BACKGROUND

The facts viewed in the light most favorable to plaintiffs, the nonmoving parties, are: Between January and May of 2008, four teenage nursing assistants who worked at the Good Samaritan Society of Albert Lea, Minnesota, engaged in systematic abuse of a number of elderly adult residents of Good Samaritan's facility. Docket 70 at 3. Four of the victims of the abuse, Juline Jacobs, Mavis Knutson, Grace Reshetar, and Opal Sande, are now deceased. The causes of death are unrelated to the abuse. In April of 2010, plaintiffs, in their representative capacities for each of the victim's estates, brought these survival actions based on the residents' personal injuries that occurred at Good Samaritan's facility.

In June of 2010, Good Samaritan moved to dismiss the case claiming that Minnesota, rather than South Dakota, law applied to this action. Docket 23. Minnesota law provided that a personal injury cause of action abates with the death of the claimant. This court denied Good Samaritan's motion on December 28, 2010, and applied South Dakota's then-existing choice-of-law rule to conclude that South Dakota had the "most significant relationship" to the claim. Docket 49. Good Samaritan now moves for summary judgment. Docket 69.

## STANDARD OF REVIEW

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party can meet this burden by presenting evidence that there is no dispute of material fact or that the nonmoving party has not presented evidence to support an element of his case on which he bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.' " *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (2005) (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)).

If there is a dispute in facts that could affect the outcome of the case, then summary judgment is precluded. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). What is a material fact is determined by the applicable substantive law in the case. *Id.* If there is a genuine dispute in facts such that a reasonable jury could return a verdict for the nonmoving party, then summary judgment is inappropriate. *Id.* Under this analysis, the nonmoving party receives "the most favorable reading of the record as well as the benefit of [all] reasonable inferences that arise from the record." *Eng v. Cummings, McClorey, Davis & Acho, PLC*, 611 F.3d 428, 432 (8th Cir. 2010) (citation omitted). "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Aucutt v. Six Flags Over Mid-America, Inc.*, 85 F.3d 1311, 1315 (8th Cir. 1996) (citation omitted).

## DISCUSSION

The initial dispute in this case is whether Minnesota or South Dakota law applies to the cause of action based in tort law. Both parties agree that the states' laws conflict[1] because the personal injury claim would abate under Minnesota's survival statute if Minnesota law applies, and the claim would proceed if South Dakota law applies. Good Samaritan argues that South

---

[1] *Compare* Minn. Stat. § 573.01 (stating "[a] cause of action arising out of an injury to the person dies with the person of the party in whose favor it exists") *with* SDCL 15-4-1 ("All causes of action shall survive and be brought, notwithstanding the death of the person entitled . . . to the same[.]").

Dakota's newly adopted choice-of-law rule, which directs courts to apply the law of the state where the injury occurred, is a procedural law that applies retroactively to actions pending prior to its enactment. For that reason, Minnesota's substantive law applies and the action abates. Plaintiffs allege that South Dakota's new choice-of-law rule is substantive and not retroactive, and the court must analyze which state has "the most significant relationship" to the claim.

I.     **Choice-of-Law Rule**

The first step the court must take is to determine what choice-of-law rules apply. *See Klipsch, Inc. v. WWR Tech., Inc.*, 127 F.3d 729, 733 (8th Cir. 1997). "It is, of course, well-settled that in a suit based on diversity of citizenship jurisdiction the federal courts apply federal law as to matters of procedure but the substantive law of the relevant state." *Hiatt v. Mazda Motor Corp.*, 75 F.3d 1252, 1255 (8th Cir. 1996) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). In a choice-of-law analysis for a diversity action brought in federal district court, the choice-of-law rules are substantive for *Erie* purposes, and the choice-of-law rules of the forum state are applied to determine the litigating parties' rights. *Allianz Ins. Co. v. Sanftleben*, 454 F.3d 853, 855 (8th Cir. 2006). Because this action was filed in South Dakota, the court will apply the South Dakota choice-of-law rules.

At the time this action was filed, South Dakota used "the most significant relationship" test from the Restatement (Second) of Conflict of Laws to determine which state's law applies in a multi-state tort action. *Chambers v. Dakotah Charter, Inc.*, 488 N.W.2d 63, 67 (S.D. 1992). During the 2011 legislative session, House Bill 1145 was passed and signed into law. It altered the state's choice-of-law rule as it applies to the survival of personal injury claims following death. The language of the new law adds a new section to SDCL ch. 21-3, which provides:

> In any action arising out of an injury to the person, the local law of the state where the injury occurs determines whether a claim for damages survives the death of the party sought to be held liable or of the injured person. For purposes of this section, the place where the injury occurs is the place where the forces causing the injury first result in actionable injury to the injured person.

SDCL 21-3-14. The statute became effective on July 1, 2011, while this action was pending. Docket 70 at 31. As a result, the inquiry is whether the newly enacted statute applies retroactively to this action.

Both parties agree that the South Dakota Supreme Court case, *Dahl v. Sittner*, 474 N.W.2d 897 (S.D. 1991), controls the retroactivity analysis. *Dahl* recognizes that newly enacted or amended statutes are not given retroactive effect unless the South Dakota Legislature expressly indicates

otherwise.[2] *Id.* at 901. South Dakota substantive statutes are not applied retroactively. *See id.* But "[w]here a new statute deals only with procedure, it applies to all actions, including those which have already accrued or are pending, as well as those which arise after enactment of the statute." *Id.*

Although both the *Erie* test and South Dakota's retroactivity analysis label and discuss the substance-procedure dichotomy, they are not the same and each should be a distinct analysis.[3] The Supreme Court has been clear

---

[2] Plaintiffs argue that there is proof that the legislature did not intend for this statute to be applied retroactively because the statute originally included language, deleted before enactment, that would have applied it to all pending cases. Deletion of a provision within a statute prior to its going into effect is not proof of the legislature's intent, and the court should not examine legislative history when the text of a statute is not ambiguous. *See Fin-Ag, Inc. v. Watertown Livestock Auction, Inc.*, 754 N.W.2d 23, 28 (S.D. 2008) ("[W]e consistently only use the plain language of the statute and never examine the policy or legislative history unless the text is ambiguous."). Because the text of SDCL 21-3-14 is unambiguous, the court will not consider the legislative history. Plaintiffs also note the individual statements of one legislator to support the conclusion that the statute was not intended to apply retroactively, but this support is equally unavailing. *See Benson v. State*, 710 N.W.2d 131, 159 n.15 (S.D. 2006) ("We have consistently held that statements of individual legislators are not persuasive to establish the intent of the Legislature for a particular statute.") (citations omitted).

[3] *See Sun Oil Co. v. Wortman*, 486 U.S. 717, 726 (1988) (stating that the words substance and procedure mean little except to describe a dichotomy, and what the two words mean in each context is determined by the purpose or reason that the dichotomy is drawn); *Ferrell v. W. Bend Mut. Ins. Co.*, 393 F.3d 786, 796 (8th Cir. 2005) (noting the two distinct analyses for *Erie* and conflict-of-law inquiries even though both require a substance and procedure determination). *See also Boyd Rosene & Assocs., Inc. v. Kan. Mun. Gas Agency*, 174 F.3d 1115, 1121 (10th Cir. 1999) (stating that even if attorney's fees are substantive for *Erie* purposes "they are not thereby necessarily substantive under Oklahoma choice-of-law rules.").

7

that it "rejects the notion that there is an equivalence between what is substantive under the *Erie* doctrine and what is substantive for purposes of conflict of laws." *Sun Oil Co. v. Wortman*, 486 U.S. 717, 726 (1988) (citation omitted). For an *Erie* analysis, the substance-procedure determination is made by applying the outcome determinative test with its purpose being to provide "substantial uniformity of predictable outcome between cases tried in a federal court and cases tried in the courts of the State in which the federal court sits." *Id.* at 727 (citations omitted). The outcome determinative test acknowledges the goals identified in *Erie*: avoiding the inequitable administration of laws and discouraging forum shopping. *In re Baycol Prods. Litig.*, 616 F.3d 778, 787 (8th Cir. 2010) (citing *Hanna v. Plumer*, 380 U.S. 460, 468 (1965)). For a choice or conflict-of-law determination, the substantive-procedural distinction is to "delimit spheres of state legislative competence." *Wortman*, 486 U.S. at 727. Finally, courts engage in the substance-procedure distinction to determine if a statute should be applied retroactively to a pending case because it "primarily concerns legislative intent and only secondarily considers fairness with regard to party expectations." *Boyd Rosene & Assocs., Inc. v. Kan. Mun. Gas Agency*, 174 F.3d 1115, 1121 (10th Cir. 1999).

For *Erie* purposes and to prevent different outcomes based on whether the case is filed in state or federal court, this court must determine what the South Dakota Supreme Court would conclude as to whether SDCL 21-3-14

should be applied retroactively. The South Dakota Supreme Court stated that those "statutes which affect only procedural matters, as opposed to substantive rights, are given retroactive effect." *Dahl*, 474 N.W.2d at 901. Statutes that are solely remedial or those that affect remedies should be given retroactive effect. *Tischler v. United Parcel Serv.*, 552 N.W.2d 597, 608 (S.D. 1996). Remedial statutes are those "that describe methods for enforcing, processing, administering, or determining rights, liabilities or status." *Id.* (quoting 2 Sutherland, Statutes and Statutory Construction § 41.09 at 399 (5th ed. 1992)). The South Dakota Supreme Court has also recognized that procedural law is made up of "[t]he rules that prescribe the steps for having a right or duty judicially enforced, as opposed to the law that defines the specific rights or duties themselves." *Vold v. Broin & Assocs., Inc.*, 699 N.W.2d 482, 489 (S.D. 2005) (citing Black's Law Dictionary 1221 (7th ed. 1999)).

Substantive law, conversely, "creates, defines, and regulates the rights, duties, and powers of the parties." *Id.* (citing Black's Law Dictionary 1443 (7th ed. 1999)). And "[s]tatutes affecting substantive rights . . . are not to be given retroactive effect." *Tischler*, 552 N.W.2d at 608 (citing *West v. John Morrell & Co.*, 460 N.W.2d 745, 747 (S.D. 1990)). A statute is substantive and not applied retroactively if it "*created the obligation in the first place, where there had been none before.*" *Id.* at 609 (citing *West*, 460 N.W.2d at 748) (Sabers, J., concurring) (emphasis added)). "The test is whether the change in the statute

constitutes a change in substantive law (as opposed to procedural law) and not whether a change in the statute affects the substantive rights of the parties." *Id.* at 608 (citing *Schultz v. Jibben*, 513 N.W.2d 923, 925 n.3 (S.D. 1994)).

The South Dakota Supreme Court has analyzed the distinction between substantive and procedural statutes numerous times for retroactivity purposes. In *Lyons v. Lederle Laboratories*, 440 N.W.2d 769, 770 (S.D. 1989), the court determined that the legislature's change to the medical malpractice statute of limitations was procedural because it only affected the remedy. Later in *West*, the court held that the legislature's change to the statute of limitations in worker's compensation cases was a substantive change for retroactivity purposes because it changed the triggering date, placed an affirmative obligation on employers to deny coverage before the statute of limitations had run, and had a substantive effect on an employer's rights. *West*, 460 N.W.2d at 747.

In *Dahl*, the court determined that an amendment to the state's punitive damages statute, which regulated discovery and established a reasonable basis for the claim before submission to the jury, was procedural and could be applied retroactively because it left the substantive nature of the statute unchanged. *Dahl*, 474 N.W.2d at 902. The court concluded that the amended statute "only affects the procedures involved in obtaining discovery regarding

10

punitive damages and submitting the claim to the finder of fact." *Id.* In *Tischler*, the court analyzed a new worker's compensation statute and determined that the statute "created a new right for the employee to collect the automatic penalty and a new duty on the employer and insurer to pay." *Tischler*, 552 N.W.2d at 608. Thus, the statute was substantive because it created both a penalty and an obligation that had not existed before. *Id.* at 608-09. Finally, the South Dakota Supreme Court determined that an amendment to a statute that removed the power to suspend liquor licenses could not be applied retroactively because the "authority to revoke liquor licenses was not merely a procedural function, but was the power to affect the substance of the license itself." *In re Engels*, 687 N.W.2d 30, 34 (S.D. 2004).

In the present case, the enactment of SDCL 21-3-14 altered the state's choice-of-law rule for survival of personal injury claims only when one of the parties dies. It did not abolish or create new substantive law. South Dakota's substantive law on survival actions remains unchanged by the new statute. SDCL 21-3-14 now directs this court, in a multi-state tort action, to apply Minnesota state law and functions as the mechanism to determine, enforce, process, or administer litigants' liabilities, status, or rights that already exist. *See Tischler*, 552 N.W.2d at 608. The statute does not impose affirmative obligations on any parties or create new rights or duties. *See id.* at 608-09. *See also West*, 460 N.W.2d at 747. The process of applying the law of the state of

the injury versus "the most significant relationship" test may change the result of the analysis, but the statute does not alter a substantive right or remedy. For this reason, the statute is purely procedural for retroactivity purposes and applies retroactively to this claim. After applying South Dakota's choice-of-law rules, as amended, the court finds that pursuant to SDCL 21-3-14, this court must apply the law of the state where the injury occurred, which is Minnesota.

## II.   Minnesota Has the Most Significant Relationship

In the alternative, even if SDCL 21-3-14 was substantive for retroactivity purposes, the court would still apply Minnesota law because it is the state with "the most significant relationship." When making its initial determination to deny Good Samaritan's motion to dismiss, the court had to consider all facts alleged in the complaint to be true. Docket 49 at 3; *Jacobs ex rel. Jacobs v. Evangelical Lutheran Good Samaritan Soc'y*, 2010 WL 5439767, *1 (D.S.D. Dec. 28, 2010). Now on summary judgment, the court does not have to accept all of plaintiffs' facts as true, but rather, views the facts in the light most favorable to the nonmoving parties and draws all reasonable inferences in their favor. With the summary judgment lens and in light of the facts uncovered during discovery, both the contacts[4] and the policies[5] of "the most

---

[4] Under this test, the court views the following contacts: (1) "the place where the injury occurred"; (2) "the place where the conduct causing the injury occurred"; (3) the domicil, residence, nationality, place of incorporation and place of business of the parties"; and, (4) "the place where the relationship, if any, between the parties is centered." Restatement (Second) of Conflict of Laws

significant relationship" test of the Restatement (Second) of Conflict of Laws support application of Minnesota law.

The four contacts described in § 145 almost entirely relate to Minnesota. The injuries and all allegedly tortious conduct occurred in Minnesota. All actors or victims who were involved in these relationships and disputes are Minnesota residents. Relevant policies were put in place in Good Samaritan-Albert Lea by Minnesota employees. Any employee supervision and all hiring, firing, and retention decisions were made in Minnesota. The relationship between the decedents, the representatives, and Good Samaritan is centered in Minnesota. The only contact that supports application of South Dakota law is that Good Samaritan is a North Dakota corporation with its principal place of business in South Dakota. These contacts overwhelmingly support application of Minnesota law.

After determining the relative importance of the "contacts" found within § 145(2) and that they weigh in favor of applying Minnesota rather than South

---

§ 145.

[5] Other principles the court must weigh are: (1) "the needs of the interstate and international systems"; (2) "the relevant policies of the forum"; (3) "the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue"; (4) "the protection of justified expectations"; (5) "the basic policies underlying the particular field of law"; (6) "certainty, predictability and uniformity of result"; and, (7) "ease in the determination and application of the law to be applied." Restatement (Second) of Conflict of Laws § 6.

Dakota law, the court also considered the seven § 6 Restatement principles in light of the contacts already established. The court finds that factors two and three, which consider the policies of the forum state and other interested states, are the most useful to resolve this conflict dealing with a survival action. South Dakota has an interest in ensuring that a business which operates within the state does so without harm to others. South Dakota also has an interest that its law not be used as the means to maneuver around another state's unfavorable law. Minnesota's public policy clearly indicates that survival actions are barred. Minn. Stat. § 573.01. As the state with the clearest connection to the dispute, this principle weighs heavily in favor of applying Minnesota's law. These basic principles, contacts, and the other policy determinations listed in the Restatement show that Minnesota has the most significant relationship to the action. As a result, Minnesota law applies to this action.

### III. Applying Minnesota Law to Survival Actions

"Under Minnesota law, a claim for personal injuries dies with the plaintiff, subject only to specifically defined exceptions." *Deal v. Northwood Children's Home Soc'y, Inc.*, 608 N.W.2d 922, 924 (Minn. Ct. App. 2000). Minn. Stat. § 573.01 provides, "[a] cause of action arising out of an injury to the person dies with the person of the party in whose favor it exists[.]" The

survival statute does not define "injury to the person." *Lipka v. Minn. Sch. Emps. Ass'n, Local 1980*, 537 N.W.2d 624, 629 (Minn. Ct. App. 1995).

To determine whether a claim can survive a party's death, the Minnesota Supreme Court has said that the survivability test is in "the substance, not the form, of the cause of action." *Nelson v. Holland*, 776 N.W.2d 446, 449 (Minn. Ct. App. 2009) (citation omitted). The court examines whether a personal injury is the "primary and moving cause of the damages sought," and "the nature of the damages sued for rather than the form of the remedy." *Lipka*, 537 N.W.2d at 629 (citations omitted).

The damages that plaintiffs seek here are "[f]or the physical pain and mental and emotional suffering" of the decedents and for their medical expenses. Docket 1 at 9. The requested damages are compensatory and punitive, which relate back to the alleged tortious conduct of Good Samaritan and its employees. These damages stem from the personal injuries to the residents themselves. None of the damages sought are unique harms to the estates of the deceased residents; therefore, the claims based on the decedents' injuries extinguished upon their deaths. *See* Minn. Stat. § 573.01; *Johnson v. Consol. Freightways, Inc.*, 420 N.W.2d 608, 613 (Minn. 1988) (stating that section 573.01's phrase "injury to the person" relates only to two people, "the injured person and the one who perpetrated the injury.").

Under the public policy of Minnesota as expressed in Minn. Stat. § 573.01, plaintiffs' claims of negligent retention, negligent supervision, negligent management, negligence as a matter of law,[6] and punitive damages must abate because the substance of each is based in tort law and cannot survive the deaths of Jacobs, Knutson, Reshetar, and Sande. Good Samaritan has met its burden of showing that there is no genuine issue of material fact and that as a matter of law, plaintiffs' pleaded claims abate under Minnesota law. *See Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989) ("The presence of a genuine issue of fact is predicated on the existence of a legal theory which can be considered viable under the nonmoving party's version of the facts. The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law."); *see also Jones ex rel. Jones v. Winnebago Indus., Inc.*, 460 F. Supp. 2d 953 (N.D. Iowa 2006) ("[S]ummary judgment may be 'particularly appropriate'

---

[6] While negligence per se claims are based in statute and are not a typical negligence or personal injury claim, they still abate under Minn. Stat. § 573.01 because all claims are based on the personal injuries of the residents. *See Estate of Benson by Benson v. Minn. Bd. of Med. Practice*, 526 N.W.2d 634, 637 (Minn. Ct. App. 1995) ("That the cause of action is a creature of statute does not change its nature or remove it from the survival statute.") (citation omitted). The Minnesota Court of Appeals has found that statutory causes of action, like claims under the Minnesota Human Rights Act and an invasion of statutorily protected privacy rights under the Minnesota Government Data Practices Act, abate with the death of the claimant. *Id.*; *Lipka*, 537 N.W.2d at 630. Accordingly, plaintiffs' claims under the Minnesota Vulnerable Adult Act are personal injury claims that stem from tort law and abate upon death.

here, because . . . the issue of the appropriate choice of law is a question of law for the court.").

Plaintiffs did not set out any facts that sufficiently show that their claims may continue. Even viewing the facts in the light most favorable to plaintiffs and drawing all reasonable conclusions in their favor, the court finds that summary judgment is appropriate.

## CONCLUSION

South Dakota's amended choice-of-law rule is a procedural statute for retroactivity purposes. Because the statute is procedural and does not affect substantive rights or law, it applies retroactively to this cause of action and directs the court to apply Minnesota substantive law on the survivability issue. Even if the statute did not apply, under the "the most significant relationship test" the court would reach the same result. When applying Minnesota substantive law, plaintiffs' personal injury claims against Good Samaritan abated upon each decedent's death. Because plaintiffs only pleaded actions sounding in tort, all claims abate and summary judgment in favor of Good Samaritan is appropriate. Therefore, it is

ORDERED that Good Samaritan's motion for summary judgment (Docket 69) is granted.

IT IS FURTHER ORDERED that Good Samaritan's motion to seal (Docket 67) is denied as moot.

IT IS FURTHER ORDERED that plaintiffs' motion to compel discovery (Docket 57) is denied as moot.

IT IS FURTHER ORDERED that Good Samaritan's motion to defer ruling on Good Samaritan's motion for summary judgment (Docket 109) is denied as moot.

Dated February 2, 2012.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE